DAVID B. GOLUBCHIK (State Bar No. 185520)
ANTHONY A. FRIEDMAN (State Bar No. 201955)
LINDSEY L. SMITH (State Bar No. 265401)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dbg@lnbyb.com, aaf@lnbyb.com, lls@lnbyb.com

Attorneys for Howard Grobstein, Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| **In re:** | ) Case No.: 2:10-bk-15109-RN |
| | ) |
| **DIAMOND DECISIONS, INC.** | ) Chapter 11 Case |
| | ) |
| Debtor. | ) |
| | ) **CHAPTER 11 TRUSTEE'S** |
| | ) **STATUS REPORT** |
| | ) |
| | ) |
| | ) |
| | ) <u>Hearing:</u> |
| | ) Date:    October 12, 2010 |
| | ) Time:    2:00 p.m. |
| | ) Place:   Courtroom 1645 |
| | ) |

**TO THE HONORABLE RICHARD M. NEITER, UNITED STATES BANKRUPTCY JUDGE:**

Howard Grobstein, Chapter 11 Trustee for Diamond Decisions, Inc., Debtor in the above-referenced Chapter 11 case ("Debtor"), hereby files his Status Report in connection with the Debtor's Chapter 11 bankruptcy case.

1

### A. Background and Appointment of Trustee

The Debtor commenced this case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on February 12, 2010 (the "Petition Date").

Prior to the Petition Date, the Debtor's business included the manufacture and sales of high-end fashion apparel, namely designer jeans. The clothing was sold in various high end retail stores including Nordstroms, Neiman Marcus and Bloomingdales. The Debtor's operations were financed primarily by Union Bank, N.A. (the "Bank"), which was owed approximately $15 million on the Petition Date.

Pursuant to an Order entered on February 24, 2010, a Chapter 11 trustee was appointed by the Court. The Office of the United States Trustee appointed Howard Grobstein as the Chapter 11 Trustee of the Debtor's estate (the "Trustee").

### B. Emergency Conversion Motion

Immediately upon the Trustee's appointment, the Trustee, with his proposed professionals, commenced investigating the Debtor's assets and liabilities, including its operations. Meetings were held with the Debtor's management, at which time numerous representations were made with respect to the Debtor's operations, although documentation and other evidence supporting such representations were not provided to the Trustee and his professionals. Additionally, the Debtor's management has impeded the Trustee's efforts in gathering documentation and other evidence critical to the Debtor's operations.

Moreover, based on the fact that the Debtor's business could not be operated without valid insurance coverage in place, the Trustee had no choice but to instruct all personnel to leave the Debtor on March 2, 2010. Without insurance coverage in place, without personnel, without money to pay employees, without cash collateral, without any financial information, and without any evidence of accounts receivable and inventory to generate income to fund operations, there appeared to be no basis in continuing to operate the Debtor's business as a going concern. As a result, the Trustee determined that cessation of operations and conversion to Chapter 7 was appropriate. The fact that the Debtor did not have valid insurance in place was the basis for seeking approval of the Motion on an emergency basis.

1    To that end, on March 5, 2010, with the Trustee having not received evidence (1) of proof that the Debtor has valid business and property insurance coverage in place, although the Debtor maintains equipment and inventory in numerous locations; (2) of proof that the Debtor has worker's compensation insurance coverage, which is critical in light of the fact that the Debtor purportedly employs 38 people to carry out its business operations; (3) that the Debtor has valid accounts receivable; (4) that the Debtor has valid orders for merchandise; and (5) that the Debtor has business records reflecting its obligations to secured and unsecured creditors, caused to be filed his *Emergency Motion To Convert Case To One Under Chapter 7 Of The Bankruptcy Code And Order Compelling Management And Employees To Turn Over Business Records* (the "Motion to Convert").

At the conversion hearing before Judge Russell, Carolyn Jones, CEO of the Debtor, submitted a declaration with evidence of procurement of insurance. Based on the foregoing, the emergency was resolved and the hearing on the Motion to Convert was continued to March 22, 2010. Judge Russell also indicated that he believed that conversion may affect the value of the Debtor's intellectual property. Based on Judge Russell's comments, the Trustee determined that spending time and money fighting over conversion was not necessary since the same liquidation process can be achieved through Chapter 11 and, therefore, withdrew the Motion to Convert.

On March 19, 2010, the Trustee caused to be filed that certain *Notice Of Withdrawal Of Emergency Motion To Convert Case To One Under Chapter 7 Of The Bankruptcy Code And Order Compelling Management And Employees To Turn Over Business Records*.

C.    **Trustee's Investigations and Current Posture**

Based on the Trustee's investigations, with a particular focus on the fact that no funds were flowing into the estate from account debtors to fund the Debtor's operations, the Trustee determined that he lacked resources to continue ongoing operations. At this juncture, the Trustee believes that liquidation of Debtor's assets is the most efficient administration of Debtor's estate.

///
///
///

3

1	To that end, the Trustee shut down the Debtor's business, closed the Norco facility and
2	terminated all employees. The Trustee has retained the Los Angeles facility essentially for
3	storage purposes. Once all the fixed assets have been liquidated, the Trustee intends to vacate
4	the Los Angeles facility.

5	In order to maximize value, in or about June 2010, the Trustee prepared a sales
6	memorandum (the "Offering") outlining the assets of the Debtor available for sale, which
7	included the operating assets of the Debtor but excluding accounts receivable. The Offering was
8	transmitted to more than 15 parties who have expressed an interest in the Debtor's assets and
9	operations.

10	The Trustee spent several months negotiating with numerous parties. After deliberations
11	and negotiations, Agile Opportunity Fund, LLC ("Agile"), a creditor of the Debtor, submitted the
12	highest and best offer for the assets of the estate.

13	During the negotiation of an asset purchase agreement with Agile, the Trustee learned
14	that several of the Debtor's trademark applications had lapsed. Agile's counsel, whose practice
15	includes intellectual property, was integral and instrumental in the Trustee's efforts and success
16	in reinstating the trademark applications.

17	After reinstating the trademarks the Trustee and Agile entered into an Asset Purchase
18	Agreement (the "Agreement"). Pursuant to the Agreement, the Trustee will sell to Agile the
19	estate's right, title and interest in the majority of the Debtor's assets, including furnishings,
20	fixtures, machinery, equipment, inventory and intellectual property in exchange for $1,325,000.
21	The sale of the Debtor's assets to Agile expressly excludes the Debtor's accounts receivable and
22	the estate's claims and causes of actions against third parties.

23	On September 23, 2010, the Trustee filed that certain *"Motion of Trustee For Order*
24	*Establishing Sale Procedures For Sale Of Assets Free And Clear Of All Liens, Claims,*
25	*Encumbrances And Other Interests Pursuant To Sections 105 and 363 Of The Bankruptcy Code"*
26	(the "Sale Motion"), pursuant to which the Trustee seeks Court approval of the Agreement. The
27	Sale Motion is currently set for hearing on September 30, 2010 at 10:30 a.m. before this Court.
28	///

4

1  The Trustee continues to collect accounts receivable and investigate claims and causes of
2  action of the estate for the benefit of all creditors.

### D. Cash Collateral

As the Court is aware, Union Bank is the sole secured creditor. The Trustee and Union Bank entered into a cash collateral stipulation, subject to approval by the Court, for the Trustee's use of cash collateral to allow the Trustee to pay certain remaining administrative costs, such as rent for the sole facility (the Los Angeles facility), payment to certain former employees to assist in the collection of accounts receivable, basic monthly services and for the payment for certain administrative fees and costs. A hearing on the motion for approval of the cash collateral stipulation was held on July 22, 2010 at 2:00 p.m. in Courtroom 1645. At the hearing, the Court approved the cash collateral stipulation. The Order approving the Cash Collateral Stipulation has been lodged with the Court on September 7, 2010, however, to date, the Order has not yet been entered by the Court.

### E. Litigation

At this time, the only pending litigation by the Trustee is against insiders and certain related parties with respect to wrongful conduct vis-à-vis assets of the estate. A preliminary injunction has been issued by this Court prohibiting wrongful conduct. Unfortunately, it appears that the wrongdoers continue to engage in wrongful conduct, including operating and usurping Debtor's business. The Trustee believes that monetary sanctions are not a sufficient deterrent in this case since such order was issued by this Court and apparently ignored. The Trustee is exploring the possibility of withdrawing reference to the adversary proceeding to have access to certain additional rights and remedies which may be available through the United States District Court.

///
///
///
///
///

## CONCLUSION

Once all tangible assets are sold, the Trustee anticipates that the main focus of this case will be prosecution of claims maintained by the Estate. The Trustee continues to conduct his investigation, including following the money trail, through his forensic accountants. The Trustee respectfully requests that the Chapter 11 Status Conference be continued for approximately 120 days.

Dated: September 28, 2010

HOWARD GROBSTEIN, Chapter 11
Trustee for the estate of Diamond
Decisions, Inc.


By: /s/ Anthony A. Friedman
　　DAVID B. GOLUBCHIK
　　ANTHONY A. FRIEDMAN
　　LINDSEY L. SMITH
LEVENE, NEALE, BENDER,
　　YOO & BRILL L.L.P.
Attorneys for Chapter 11 Trustee

| In re: | | CHAPTER 11 |
|---|---|---|
| DIAMOND DECISIONS INC., | | |
| | Debtor(s). | CASE NO. 2:10-bk-15109-RN |

NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067.

A true and correct copy of the foregoing document described as: **CHAPTER 11 TRUSTEE'S STATUS REPORT**, will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 28, 2010**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Service information on attached page  [X]

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL OR ATTORNEY SERVICE:** On **September 28, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service and/or by attorney service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**_BY OVERNITE EXPRESS_**
Hon. Richard M. Neiter
U.S. Bankruptcy Court/Los Angeles Division
Edward R. Roybal Fed. Bldg. and Courthouse
255 E. Temple Street, Suite 1652
Los Angeles, CA  90012

Service information on attached page  [ ]

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Service information on attached page  [ ]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 28, 2010 | TRISH MELENDEZ | _/s/ Melendez_ |
|---|---|---|
| Date | Type Name | Signature |

4588

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Russell Clementson    russell.clementson@usdoj.gov
- Thomas A Draghi    tdraghi@westermanllp.com
- Anthony A Friedman    aaf@lnbrb.com
- David B Golubchik    dbg@lnbrb.com
- David I Horowitz    david.horowitz@kirkland.com
- Andy Kong    Kong.Andy@ArentFox.com
- Byron B Mauss    efilings@amklawgroup.com
- Queenie K Ng    queenie.k.ng@usdoj.gov
- Russell H Rapoport    rrapoport@prllplaw.com, lgillis@prllplaw.com
- Lindsey L Smith    lls@lnbrb.com
- Alan G Tippie    atippie@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

4588